Case: 1:24−mj−00130  
Assigned To : Harvey, G. Michael  
Assign. Date : 4/10/2024  
Description: Complaint W/ Arrest Warrant

# STATEMENT OF FACTS

From March 2023 to the present, Homeland Security Investigations ("HSI") has been conducting an investigation into the illegal importation, possession, and distribution of controlled substances from China to the Washington, D.C. region. As described below, through an investigation that included a law enforcement-controlled delivery, consensually monitored federal prison phone calls, and evidence seized from a search warrant, your affiant believes there is probable cause that Marvin Benjamin **MARTIN** has violated 21 U.S.C. § 841 and 846 (Attempted Possession with Intent to Distribute Controlled Substances), in this case, N,N-dimethylpentylone, a Schedule 1 controlled substance, commonly referred to as "boot".

On or about February 11, 2024, United States Customs and Border Protection (CBP) officers assigned to the International Mail Facility at Los Angeles International Airport (LAX) conducted an inspection of an inbound package ("TARGET PACKAGE") shipped from China to Washington D.C. CBP Officers examined the TARGET PACKAGE, identified a quantity of suspected narcotics, and provided a sample of the substance to CBP Laboratories and Scientific Services (LSS) personnel for field testing; LSS chemists presumptively identified the substance as dipentylone.[1] The TARGET PACKAGE's listed recipient was "Martin HALL" at an address on XXxx Xx. SE, Washington, DC xxxxx ("ADDRESS 1").



**Left to right: TARGET PACKAGE with listed recipient "Martin HALL" at an address on XXxx Xx. SE, Washington, DC xxxxx; the contents of TARGET PACKAGE on a scale indicating approximately 10 kilograms of dipentylone**

---

[1] Dipentylone, also known as N,N-dimethylpentylone, is a synthetic cathinone that produces psychostimulant effects similar to cathinone. Dipentylone functions by increasing the concentration of dopamine, serotonin, and norepinephrine in the central nervous system similar to amphetamines. As a positional isomer of pentylone, dipentylone is controlled in Schedule I of the Controlled Substance Act.  
See https://www.govinfo.gov/content/pkg/FR-2024-02-08/pdf/2024-02593.pdf

On March 7, 2024, the HSI Washington D.C. High Intensity Drug Traffic Area ("HIDTA") group, along with the Washington D.C. Metropolitan Police Department ("MPD") and additional assisting law enforcement officers from various agencies, conducted a controlled delivery of the TARGET PACKAGE to its listed recipient address of ADDRESS 1.  Law enforcement replaced the narcotics inside the TARGET PACKAGE with an inert substance ("sham") packaged in similar fashion as the original narcotics and placed a concealed GPS tracker inside of the box.  An undercover officer (the "UC") delivered the TARGET PACKAGE to the front steps of ADDRESS 1, where your affiant and additional law enforcement officers observed **MARTIN** retrieve the TARGET PACKAGE and then enter his vehicle (VEHICLE 1) with the TARGET PACKAGE in hand. **MARTIN** drove VEHICLE 1 to the Shell gas station at 5010 Benning Rd SE, Washington D.C. 20019, an area known to law enforcement as a narcotics distribution point, where an unidentified male entered the passenger side of VEHICLE 1 for several minutes before exiting.  Between approximately 11:48 a.m. and 12:37 p.m., agents continued mobile surveillance of **MARTIN**, who appeared to begin conducting countersurveillance and later discarded the TARGET PACKAGE in a nearby residential trash bin.  Based on training, experience, and the above stated facts, your affiant believes **MARTIN** became aware he was being followed by law enforcement and discarded the TARGET PACKAGE in an attempt to conceal evidence of his illicit activity.

At approximately 12:37 p.m., investigators encountered **MARTIN** driving in a nearby residential neighborhood and attempted to detain **MARTIN**, who evaded law enforcement vehicles at a high rate of speed, crashing into a minivan and nearby fence while fleeing the area. Agents subsequently began traveling to several addresses affiliated with **MARTIN** in an attempt to locate him, including an address on Xxxxxx Xx, Lanham, MD xxxxx (ADDRESS 2), where they again encountered and attempted to block **MARTIN**.  **MARTIN** then accelerated VEHICLE 1 towards the agents, striking the front side of an agent's vehicle while fleeing the area at a high rate of speed.

At approximately 2:15 p.m., agents again observed **MARTIN** on foot moving from the rear of ADDRESS 2 toward a vehicle parked in the driveway ("VEHICLE 2") and maneuvered their vehicles to block the street. **MARTIN** drove VEHICLE 2 towards the agents at a high rate of speed, swerved onto the pedestrian sidewalk, and hit a tree while accelerating past agents' vehicles and again evading law enforcement custody. Based on training, experience, and the above stated facts, your affiant believes MARTIN's efforts to evade law enforcement, to the extent of damaging multiple vehicles including law enforcement vehicles, was an attempt to evade law enforcement custody and prevent law enforcement from obtaining additional  evidence of his narcotics trafficking activity.

As part of the investigation, your affiant also obtained consensually recorded jail calls placed to **MARTIN** from several federal inmates housed at various Federal Bureau of Prisons (BOP) facilities, namely calls made on March 7, 2024, the date of the law enforcement-controlled delivery, and after.  During these calls**, MARTIN** made numerous incriminating statements, as well as statements about his intention to continue to avoid law enforcement, to include the following.  All quoted text below is based on your affiant's best understanding and interpretation of the audio files and is subject to further revision.

On a March 7, 2024 consensually recorded jail call, **MARTIN** stated "*About to get my car fixed, like drop it off.*" INMATE 1 asked what was wrong with his car and **MARTIN** responded, "*They tried to box me in*". As INMATE 1 asked additional questions, **MARTIN** replied, "*I ain't trying to talk about that shit over the phone.*" As **MARTIN** continued to speak cryptically about his encounters with law enforcement earlier in the day, INMATE 1 cautioned **MARTIN**, "*Stay your ass from over there*", likely a reference to the certain neighborhood of Southeast Washington D.C. where law enforcement began surveilling **MARTIN**. **MARTIN** responded, "*It ain't even the area, it's just…what I was doing at the time…I just need to get rid of this car now.*" "*There's some shit I got to do today, got to change my number, get a new number.*" Based on my training, experience, and **MARTIN's** own statements on the recorded call, your affiant believes **MARTIN** was communicating that he knew law enforcement was looking for him based on "*…what I was doing at the time…*" (committing federal violations), and that he intended to continue evading law enforcement, in part by getting rid of his car and changing his phone number.

On a March 13, 2024 consensually recorded jail call, **MARTIN** stated, "*Ain't got no luck right now, man…that shit fucked up. [unintelligible] I'm probably like 50 bands in the hole…It is what it is, man. You take some shit on the chin, and you just gotta make that shit back, you gotta make shit shake.*" INMATE 1 then asked, "*Didn't this same shit happen this time, around this time last year?*" **MARTIN**: "*Think so, I don't know…taking that shit day by day. You win some, you lose some. Live to fight another day.*" Your affiant knows that "*bands*" is a slang term for money, most commonly a quantity of $1,000.00, with "*50 bands*" most likely a reference to $50,000.00. Based on training, experience, and participation in this investigation, your affiant believes INMATE 1's statement about the same thing happening "last year" was likely a reference to a February 2023 law enforcement seizure of a box containing approximately 15 kilograms of dipentylone intended for MARTIN. Your affiant further believes that this conversation was in relation to **MARTIN** losing money from law enforcement's seizure of the TARGET PACKAGE **MARTIN** later took possession of via controlled delivery on March 7, 2024.

On the same March 13, 2024 call, **MARTIN** stated, "*Yeah, I'm just trying to mothafuckin' [unintelligible] grab a little bit of lawyer money and stay the fuck out the way. He said he wants 20 bands* [overlapping conversation]…*just got fucked for 20 bands…finessed my bread and my man's bread. So now I'm [unintelligible] get this shit back for me and my mans.*" Based on training and experience, your affiant believes **MARTIN** was referring to an unidentified co-conspirator ("my mans") who he had lost money with, as well as attempts to make that money back.

On an April 3, 2024 consensually recorded jail call, another federal inmate (INMATE 2) spoke to **MARTIN** asking, "*You still out the city and shit?*" **MARTIN** replied, "*Yeah, I be out the city, out in Maryland. I be switching that shit up. I had a little situation going on. Some people was trying to get me and shit, did a little sting, but I…like dodged a bullet.*" On a separate consensually recorded jail call on April 3, 2024 with a different federal inmate (INMATE 3), **MARTIN** disclosed, "*I told you that I had a little encounter and shit?...Yeah, they tried to bee sting me…the alphabets…not 12, but the alphabets. Tried to box me in and some other shit.*" INMATE 3 replied, "*Yeah, you just got to stay out the way, you hear me?*" Based on training and experience, your affiant believes **MARTIN's** reference to a "bee sting" was a reference to a law enforcement "sting", which in this case was the March 7, 2024, controlled delivery. Your affiant knows that "alphabets" is slang for federal law enforcement agencies and that "12" is slang for

local police, meaning **MARTIN** indicated his awareness that federal law enforcement was investigating him, and not solely local law enforcement.

On the same April 3, 2024 consensually recorded jail call, INMATE 3 asks **MARTIN** if he had spoken to "Plaza" recently and **MARTIN** stated that "*some shit went left*" with "Plaza," and that "Plaza" gave **MARTIN** "*bread to go to do some shit and some shit got fucked up, like a n###a gave me some fake shit, so I owed him 20. But he would call me everyday like to make 20 bands come out of thin air, pressing me, after he already owed me some bands…I paid him back but now we ain't doing business no more.*" Based on training, experience, and participation in this investigation, your affiant believes **MARTIN** was likely referencing money he lost from law enforcement's seizure and controlled delivery of the TARGET PACKAGE, which contained an inert substance ("sham") that law enforcement replaced the real narcotics with, thus representing the "fake shit" **MARTIN** referenced, along with the associated loss of profits.

On April 10, 2024, law enforcement officers from HSI, the U.S. Postal Inspection Service (USPIS), the Drug Enforcement administration (DEA), the Annapolis Police Department (APD), and additional assisting law enforcement officers from various agencies executed a search warrant issued by the U.S. District Court for the District of Maryland on **MARTIN's** residence of xxx Xxxxxxx Xxxxx, Apartment X, Xxxxxxxx, MD (the "TARGET PREMISES"). During a court-authorized search of MARTIN's registered 2023 Mercedes sedan, law enforcement seized a digital scale with a white powdery residue, which tested presumptive positive for cocaine and N,N-dimethylpentylone (another name for dipentylone) on an MX908 portable mass spectrometer.

During a search of the TARGET PREMISES on the same day, law enforcement officers seized three cell phones used by **MARTIN** that contained numerous text messages discussing the distribution and sale of dipentylone, referred to throughout text messages as "boot" and "shoes." On March 5, 2024 (two days before the controlled delivery in this case), contact "Sherm Nephew" texted **MARTIN**, "*Need zip…of shoes*" to which **MARTIN** replied, "*Just got gas right now…Boot later*." On March 6, 2024, **MARTIN** texted "*Tomorrow*." Your affiant knows "boot" and "shoes" are street terms for dipentylone and similar narcotics, and that the United Parcel Service tracking on the TARGET PACKAGE initially indicated a delivery date to ADDRESS 1 on March 6, 2024 that later changed to March 7, 2024, the day of the law enforcement-controlled delivery of the TARGET PACKAGE.

On March 18, 2024, **MARTIN** texted contact "Cuz" (contact name also included a boot emoji), "*It's cool, I been thru a lot n my money got fucked up off trustin a n###a n he got finessed off some fake boot. Idk if I told u a n##a gave me 10fake chickens.*" Your affiant knows that "chickens" is a street term for kilograms. Based on training, experience, and participation in this investigation, your affiant believes that "10fake chickens" referred to law enforcement's seizure of approximately 10 kilograms of dipentylone and the March 7, 2024 controlled delivery of the TARGET PACKAGE that contained a sham substance as a replacement.

On March 19, 2024, **MARTIN** texted contact "Vell Seatpleasent", "*Got some white boot.*" "Vell Seatpleasent" texted back, "*Wya*" to which **MARTIN** replied "*58*". "Vell Seatpleasent" then asked *"Whts the ticket"* and **MARTIN** replied "*175 a zip*". Your affiant knows from previous law enforcement seizures of dipentylone that is it commonly either a white-colored or brown-

colored substance. Based on training, experience, and participation in this investigation, your affiant believes "white boot" refers to white-colored dipentylone, and that "58" refers to XXxx Xxxxxx XX, Washington, DC, the location of ADDRESS 1 and the area that your affiant has frequently observed **MARTIN** visiting via GPS tracker and in person surveillance.

Based on the above stated facts, your affiant submits that probable cause exists to charge **MARTIN** with 21 U.S.C. § 841 and 846 (Attempted Possession with Intent to Distribute Controlled Substances), in this case, N,N-dimethylpentylone, a Schedule 1 controlled substance.

Your affiant has not provided every fact known to him during the investigation, but facts sufficient to establish probable cause.

_____
SPECIAL AGENT ANDREW MALLORY
HOMELAND SECURITY INVESTIGATIONS

*Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 10th day of April, 2024.*

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE